UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
L.G.M.,

        Petitioner,

    - against -

ANTHONY J. LAROCCO, *in his official capacity as Sheriff of the Nassau County Correctional Center*; WILLIAM P. JOYCE, *in his official capacity as Acting Field Office Director, New York City Field Office, U.S. Immigration & Customs Enforcement*; KRISTI NOEM, *in her official capacity as Secretary, U.S. Department of Homeland Security*; and PAMELA BONDI, *in her official capacity as Attorney General, U.S. Department of Justice,*

        Respondents.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
2:25-cv-2631 (PKC)

PAMELA K. CHEN, United States District Judge:

On Friday, May 9, 2025, Petitioner L.G.M. ("Petitioner" or "L.G.M.") filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 ("Section 2241"). (Pet., Dkt. 1.) Named as respondents are Anthony J. LaRocco ("LaRocco"),[1] William P. Joyce ("Joyce"), Kristi Noem ("Noem"), and Pamela Bondi ("Bondi"), all in their respective official capacities (Joyce, Noem, and Bondi, together, the "Government Respondents"). L.G.M. has been in the custody of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") since August 16, 2024. (*Id.* ¶ 1.) L.G.M. requests that this Court grant him relief in the form of immediate release from detention or a bond hearing. (*Id.* ¶ 3; *see* Bail Mot., Dkt. 23-1.) For the reasons stated below, the Court grants L.G.M. a bond hearing on July 9, 2025, before this Court.

---

[1] LaRocco has not yet made an appearance.

The Court further directs the Government Respondents to produce L.G.M. in person for the bond hearing.

## BACKGROUND

### I. L.G.M.'s Immigration History

The Court summarizes only the facts most relevant to the issue at hand.[2] L.G.M. was born in El Salvador in or around 2004; following his mother's previous emigration from El Salvador to the United States, L.G.M. arrived as an unaccompanied minor in the United States on August 9, 2016 at the age of 13,[3] and reunited with his mother in Long Island. (*See* Hesser Decl., Dkt. 3-2, ¶¶ 6, 10.) The day he entered the United States, L.G.M. was placed in removal proceedings. (Hesser Decl., Dkt. 3-2, ¶ 17.) These proceedings were administratively closed after he was granted Special Immigrant Juvenile Status ("SIJS") and deferred action in conjunction with that status on October 25, 2019. (*Id.* ¶ 17; Pet., Dkt. 1, ¶ 6.) However, between 2022 and 2023, L.G.M. was convicted of several state law crimes and sentenced to a term of one year in state prison. (*See* Hesser Decl., Dkt. 3-2, ¶¶ 13–15).[4] Upon completion of his criminal sentence on August 16, 2024, L.G.M. was directly transferred into ICE custody. (*Id.* ¶ 18.) L.G.M.'s deferred action was revoked and removal proceedings were re-calendared. (*Id.*)

---

[2] The details of L.G.M.'s background, including his intellectual and mental disabilities and the threats from MS-13 that he and his family suffered in El Salvador, can be found in his Petition and related briefing. (*See* Pet., Dkt. 1; Hesser Decl., Dkt. 3-2; Bail Mot., Dkt. 23-1.)

[3] The Petition states that L.G.M. was 16 when he arrived in the United States, (Pet., Dkt. 1, ¶ 6), but later briefing confirms that he was 13, (*see* Bail Mot., Dkt 23-1, at 20).

[4] Briefing submitted by L.G.M. contains additional information on these convictions, but he was sentenced to two one-year sentences and one 15-day sentence, all to be served concurrently. (Hesser Decl., Dkt. 3-2, ¶¶ 13–15.)

As part of L.G.M.'s immigration proceedings, L.G.M.'s immigration counsel ordered a psychological evaluation of L.G.M., performed by Dr. Macarena Corral on October 21, 2024 with a subsequent competency evaluation on November 26, 202[4] by Dr. Corral. (*Id.* ¶ 20.) Because of his disabilities, L.G.M.'s immigration hearing, scheduled for November 19, 2024, was adjourned by Immigration Judge ("IJ") Charles Conroy ("Conroy"). (*Id.* ¶ 21.) Following a competency hearing on January 29, 2025, IJ Conroy "agreed with Dr. Corral's assessment that L.G.M. was not competent" but allowed the immigration procedures to proceed with safeguards. (*Id.* ¶ 22.) On April 1, 2025, IJ Conroy granted L.G.M. deferral of his removal under the Convention Against Torture ("CAT"). (*Id.*) On April 24, 2025, the Department of Homeland Security appealed IJ Conroy's decision. (Pet., Dkt. 1, ¶ 20.) L.G.M. remains in ICE custody. (*Id.* ¶ 1.)

## II. Procedural History

On Thursday, May 8, 2025, L.G.M.'s counsel was informed that L.G.M. was transferred from the Orange County Jail in Goshen, New York, his long-term detention facility while in ICE custody, to the Nassau County Correctional Center ("NCCC"), and was advised that ICE intended to "imminently transfer L.G.M. to Louisiana" by Saturday, May 10. (*Id.* n. 2.) On Friday, May 9, L.G.M.'s counsel filed the instant Petition to challenge L.G.M.'s prolonged detention by ICE, enjoin transfer, and preserve the status quo. (*See generally id.*) The same day, L.G.M.'s counsel informed the Government Respondents that the Petition had just been filed in this district and requested that the Government Respondents "preserve the status quo" by keeping L.G.M. in the district. (Dkt. 8-1, at 2.) At 9:59 p.m. that night, the Government Respondents notified L.G.M.'s counsel that "ICE [would] not agree to Petitioner's request." (*Id.* at 1.) Despite L.G.M.'s counsel having filed the Petition on May 9, the Petition was not assigned to the Court until Monday, May 12. (*See* 5/12/2025 Dkt. Order.) The Court immediately directed the Government

Respondents "not to remove [Petitioner] from this district until further order from the Court," and set a hearing on the requested relief for the following day. (5/12/2025 Scheduling Order.) But, by then, the Government Respondents had already moved L.G.M. to an ICE detention facility in Louisiana. (Dkt. 8.)

On May 12, the Court granted L.G.M.'s motion to compel his return to this district because of his pending habeas petition here. (5/12/2025 Dkt. Order (citing *Ozturk v. Hyde*, No. 25-1019, 2025 WL 1318154 (2d Cir. May 7, 2025).) On Tuesday, May 13, the Court held a hearing regarding L.G.M.'s location and the Government Respondents' efforts to return him to this district. (5/13/2025 Min. Entry.) On Friday, May 16, the Government Respondents filed a letter in which they, *inter alia*,

> acknowledge[d] that the facts and law set forth in [*Black v. Decker*, 103 F.4th 133 (2d Cir. 2024)][5] would likely lead this Court to order that Petitioner receive a bond hearing before an IJ. At such a hearing, the government would have to show by clear and convincing evidence that Petitioner's continued detention is warranted, and if Petitioner is not found to be a danger to the community, the IJ would have to consider "alternatives to detention" and Petitioner's "ability to pay" when setting a bond amount.

(Dkt. 12, at 2.) On Wednesday, May 21, the Government Respondents advised the Court that L.G.M. would be transferred to ICE's Buffalo Service Processing Center in Batavia, New York (the "Batavia Facility") "in the coming days." (Dkt. 15, at 1.) Petitioner is currently in custody in the Batavia Facility.

## LEGAL STANDARD

Federal district courts have jurisdiction to hear Section 2241 habeas cases. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (explaining that Section 2241 "authorize[s] any person to claim

---

[5] The Court notes that the Government Respondents' citations on page 2 of their letter incorrectly cite *Black* as "103 F.3d" instead of 103 F.4th.

4

in federal court that he or she is being held 'in custody in violation of the Constitution or laws . . . of the United States'" (quoting 28 U.S.C. § 2241(c)(3))); *see also Ostrer v. United States*, 584 F.2d 594, 596 n. 1 (2d Cir.1978) ("[A] district court has inherent power to enter an order affecting the custody of a habeas petitioner who is properly before it contesting the legality of his custody."). This "inherent power . . . extends to admitting petitioners to bail in the immigration habeas context." *Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 153 (2d Cir. 2007) (citing *Mapp v. Reno*, 241 F.3d 221, 227 (2d Cir. 2001) (internal quotations omitted)).

## DISCUSSION

As an initial matter, this Court has already determined, without opposition from either party, that it has jurisdiction over the Petition and that venue is proper in this district because the Petition was filed while L.G.M. was still in this district. (5/12/2025 Dkt. Order.) Additionally, both sides agree that L.G.M. is entitled to *some* form of habeas relief. (*See* Bail Mot., Dkt. 23-1, at 11; Gov't Opp. to Bail Mot. ("Gov't Opp."), Dkt. 27, at 7.) L.G.M. argues that the most appropriate relief is L.G.M.'s immediate "release . . . from further unlawful detention," (Pet., Dkt. 1, at ECF[6] 11), whereas the Government Respondents argue that this relief should be limited to a bond hearing conducted by an IJ. (*See, e.g.*, Gov't Opp., Dkt. 27, at 7.)

The Court agrees with the Government Respondents that the appropriate relief at this juncture is for Petitioner to receive a bond hearing; what remains to be decided is *who* should preside over that hearing.

---

[6] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

## I. The Court Can Hold the Bond Hearing

This Court's authority to hold the bond hearing is uncontested. Indeed, recent Second Circuit precedent firmly establishes that this Court can hear and decide Section 2241 habeas petitions brought by individuals in immigration detention, so long as the petitions challenge the constitutionality of the petitioners' detention rather than the underlying removal proceedings. *Ozturk*, 136 F.4th at 399–400 (finding petitioner's First and Fifth Amendment challenges to her detention distinct from challenges to her removal proceedings and therefore properly within the district court's jurisdiction) (collecting cases); *Mahdawi v. Trump*, 136 F.4th 443, 452 (2d Cir. 2025) (same). To hold otherwise would lead to an "absurd" or "staggering" result whereby detainees could only challenge their detention after it is over. *Ozturk*, 136 F.4th at 400–01 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (opinion of Alito, J., joined by Roberts, C.J., and Kennedy, J.)). Thus, the Court turns to whether it should hold the bond hearing.

## II. This Court Will Hold the Bond Hearing

The Government Respondents argue that, for reasons of convention and efficiency, an IJ should conduct the bond hearing, and not this Court. According to the Government Respondents, "[i]n this Circuit, IJs rather than district courts routinely conduct [8 U.S.C. §] 1226(c) bond hearings when a district court orders such a hearing, after determining . . . that one is constitutionally required under the particular facts and circumstances of the case under review." (Gov't Opp., Dkt. 27, at 6 (cleaned up) (collecting cases)); *see Black*, 104 F.4th at 155 (finding that "due process entitled [the noncitizens] to individualized bond hearings by an IJ once their detentions became unreasonably prolonged").[7] The Government Respondents further note that

---

[7] To the extent the Government Respondents rely on this language from *Black* to argue that "the process that would be due under *Black* is not any process, it is a bond hearing before the IJ," (Gov't Opp., Dkt. 27, at 2), L.G.M.'s counsel responds that the *Black* court directed an IJ to hold the bail hearing only because the *Black* petitioners had requested that specific relief. (Bail Mot.,

"courts in this Circuit ordinarily favor conditional grants of the writ." (Gov't Opp., Dkt. 27, at 7 (cleaned up) (quoting *Fernandez Aguirre v. Barr*, No. 19-CV-7048 (VEC), 2019 WL 4511933, at *7–8 (S.D.N.Y. Sept. 18, 2019))); *see Fernandez Aguirre*, 2019 WL 4511933, at *3 ("A conditional grant occurs when a court finds that 'a constitutional infirmity justifies [the] petitioner's release' but, as an 'accommodation[ ]' to the Government, the court 'provides the [Government] with a window of time' to 'cure the constitutional error' before release is ordered." (citations omitted)). In addition to general practice, the Government Respondents argue that the "most efficient" way to proceed in this matter is for an IJ to hold the bond hearing because "the immigration court is already intimately familiar with the issues relating to L.G.M." (*See* Gov't Opp., Dkt. 27, at 2 (quoting *Black,* 104 F.4th at 155).)

The Court is not persuaded by these arguments. While the Court appreciates that prior practice can be instructive, this "routine[]" practice is not binding on the Court. (Gov't Opp., Dkt. 27, at 6.) The Court certainly defers to the immigration courts with respect to their areas of expertise and jurisdiction—including decisions to "commence proceedings, adjudicate cases, or execute removal orders." *Ozturk*, 136 F.4th at 396 (quoting 8 U.S.C. § 1252(g)). But federal courts are the arbiters of constitutional rights such as those at issue in the Petition. *Id.* at 400 (noting that "neither the IJ nor the BIA has 'jurisdiction to decide constitutional issues'" (quoting *Rabiu v. Immigr. & Naturalization Serv.*, 41 F.3d 879, 882 (2d Cir. 1994))); *Mahdawi*, 136 F.4th at 452 (same). The particular circumstances of this Petition—i.e., a complicated immigration history in which Petitioner was found removable, then granted deferred action, which is now subject to a pending appeal, coupled with a complicated ICE detention history in which Petitioner

---

Dkt. 23-1, at 11 (citing *Black*, 103 F.4th at 153).) The Court does not construe this language from *Black* as signaling a precedential preference for an IJ to preside over the bond hearing.

7

was transferred to a Louisiana ICE detention facility while his habeas petition has been pending in this district—make this matter atypical and even more in need of constitutional scrutiny.

In this case, that need outweighs any claimed efficiencies. The Court retains jurisdiction over constitutional questions that arise within IJs' adjudication of bond hearings pursuant to Section 2241 habeas petitions. (*See* Bail Mot., Dkt. 23-1, at 12–13 (collecting Second Circuit cases in which district courts ruled on motions to enforce their judgments after IJs had failed to properly conduct bail hearings on referral).) Indeed, L.G.M. lists nearly as many cases in which bond hearings by IJs were found constitutionally lacking by district courts as the Government Respondents list for the proposition that IJs are routinely ordered to conduct these bond hearings. (*Compare* Bail Mot., Dkt. 23-1, at 12–13 *with* Gov't Opp., Dkt. 27, at 6.) Even if the Government Respondents had successfully argued efficiency, "[e]conomy supplies no license for ignoring . . . often vitally inefficient [constitutional] protections." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 347 (2018) (Gorsuch, J., dissenting); *see also Stern v. Marshall*, 564 U.S. 462, 501 (2011) (Roberts, C.J.) ("[T]he fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution." (quoting *INS v. Chadha*, 462 U.S. 919, 944 (1983))).

Furthermore, the Government Respondents' efficiency argument is speculative at best. Notably, despite claiming that the "immigration court is already intimately familiar with the issues relating to L.G.M.," (Gov't Opp., Dkt. 27, at 2), the Government Respondents do not say that IJ Conroy or any other IJ directly involved in Petitioner's underlying removal proceedings would preside over the bond hearing. Indeed, it seems unlikely that IJ Conroy or any IJ who has previous knowledge of L.G.M. or his removal proceedings would be involved in the bond hearing. As Petitioner notes, given the governing regulations, "ICE's general policy and practice is to hold

bond hearings before the immigration court having jurisdiction over the *physical location* of the ICE detainee." (Pet. 5/22/2025 Ltr., Dkt. 18, at ECF 3 (citing 8 C.F.R. § 1003.19.4).) Under this practice, an IJ in Buffalo, where Petitioner is currently in custody—or, as Petitioner fears, an IJ in Louisiana should ICE return him there—would preside over the bond hearing, and not IJ Conroy, who is located in New York City.[8] In fact, were the Court to grant only conditional habeas relief and direct that Petitioner be granted a bond hearing before an IJ, the Court is aware of no guarantee which IJ would preside over that bond hearing.[9] The assignment of the bond hearing to a random IJ could easily require more oversight by the Court or more protracted proceedings, such as another hearing challenging the adequacy of the bond hearing, thereby further eroding any efficiency argument. *See, e.g.*, *R.R.M.C v. Decker*, No. 22-CV-2952 (LGS), 2022 WL 4639674 (S.D.N.Y. Sept. 30, 2022) (finding that the IJ, upon referral of a bond hearing from the district court, failed to "properly allocate the burden of proof to the Government" and requiring a new bond hearing in which the IJ "make[] specific, on-the-record findings").

Lastly, these are not ordinary times. As L.G.M. notes in his brief, IJs' immigration dockets are "exploding," and these dockets need and deserve all of the attention and expertise the IJs can give them. (Bail Mot., Dkt. 23-1, at 14.) The sudden and precipitous rise in removal cases, and

---

[8] TRAC Immigration, Charles Conroy, https://tracreports.org/immigration/reports/judge2024/00492NYC/index.html (last accessed 6/24/2025).

[9] The Government Respondents might have intended to elaborate on this issue at the previously scheduled hearing on June 27, 2025, (*see* Gov't Opp., Dkt. 27, at 2 ("As the Federal Respondents *will demonstrate*, the 'most efficient use of resources—for all parties [and this Court],' . . . would be, as the Second Circuit described in *Black*, an 'individualized bond hearing by an IJ . . . .'") (emphasis added)), which has now been canceled. But the Court ultimately does not find the efficiency argument dispositive or convincing, even assuming that an IJ involved in Petitioner's removal proceedings were to preside.

the strain they are creating on the immigration system, also prompt the Court to be concerned about how expeditiously and effectively an IJ will be able to hold a bond hearing in this matter.[10]

To spare all parties potential additional dissatisfaction and grievance in a process that has already proved protracted,[11] the Court chooses to cut to the chase and hold the bail hearing, so it can assess the witnesses and other evidence for itself.[12]

## CONCLUSION

Accordingly, the Court grants L.G.M.'s request for a bond hearing before this Court, which will take place on July 9, 2025, at 2:00 p.m., in Courtroom 4F North at 225 Cadman Plaza East, Brooklyn, New York. Given the extensive briefing the parties have already submitted on the issue of whether L.G.M. should be released under the factors laid out by *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), the Court does not require any further briefing ahead of the bond hearing. The parties will be allowed to present additional arguments orally during the hearing. Finally, the

---

[10] The Government Respondents fault L.G.M. for not bringing his Petition sooner, suggesting that this delay renders the Petition mere "posturing." (Gov't Opp., Dkt. 27, at 1–2.) The Court finds any delay arguments unavailing. Additionally, it was the Government Respondents' own actions—initiating L.G.M.'s transfer away from his counsel and family and into detention arguably more burdensome—that triggered the Petition. (*See* Pet., Dkt. 1.) The Court cannot fault L.G.M. for his reaction to ICE's dramatic actions. The Court also finds the notion that Petitioner is "posturing" almost frivolous. There can be no serious doubt that Petitioner would like to be out of ICE custody. Furthermore, Petitioner might not have realized that he was entitled to file for habeas relief before ICE decided to move him, or that his lawyers might not have been able to assemble the petition papers before then.

[11] The Court recognizes that any additional delays in L.G.M.'s removal proceedings were caused by L.G.M.'s counsel's requests for adjournment. (*See* Gov't Opp., Dkt. 27, at 2 n.3.) But if anything, these delays—to ensure L.G.M. had proper representation and appropriate safeguards due to his documented disabilities—only reinforce the Court's view that this case, rather than being "routine," requires the heightened constitutional oversight only afforded by Article III courts.

[12] The Court rejects, as pure speculation and hyperbole, the Government Respondents' contention that holding a bond hearing in this case, due to this case's complexities, would "likely produce a deluge of requests from ICE detainees who file habeas petitions as they temporarily pass through this district." (Gov't 6/5/2025 Ltr., Dkt. 22, at 2.)

Court orders the Government Respondents to produce L.G.M. in person for the bond hearing and make L.G.M. available to his counsel, either in person or via video,[13] so that they can adequately prepare for the hearing. Petitioner is directed to file any requests for accommodations for L.G.M. in light of his diagnoses, as well as support for such requests, by Tuesday, July 1, 2025.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 25, 2025
      Brooklyn, New York

---

[13] The Government Respondents have asserted that the facility where L.G.M. is being held, "Batavia[,]has modern technology to accommodate confidential virtual meetings via video teleconference and confidential attorney telephone calls." (Gov't 5/21/2025 Ltr., Dkt. 15, at 1.)